UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JA'MILLE C. TAYLOR, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Cause No. 1:16-cv-198-WTL-MJD |
| CITY OF INDIANAPOLIS, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant City of Indianapolis' ("the City") Motion for Summary Judgment (Dkt. No. 83) and Defendant Anthony Bath's Motion for Summary Judgment (Dkt. No. 98). The motions are fully briefed, and the Court, being duly advised, **GRANTS** the City's motion and **DENIES** Officer Bath's motion for the reasons set forth below.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d

892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. SUMMARY OF FACTUAL ALLEGATIONS

The properly supported facts of record, viewed in the light most favorable to the Plaintiff, Ja'mille C. Taylor, are as follow.[1] On July 23, 2014, at approximately 10:45 p.m., Ms. Taylor, an African-American female, arrived at The Woods of Eagle Creek ("the Woods"), an apartment community. Ms. Taylor, who previously had lived in the apartment complex, was going to visit with a friend, Hudson Bowers III, an African-American male who still lived at the Woods.

Ms. Taylor was sitting in her vehicle in a parking area outside of Mr. Bowers' residence talking with Mr. Bowers when Anthony Bath, who was dressed in a t-shirt and boxer shorts, rushed at Ms. Taylor's vehicle, shouting, "You dope-dealing motherfuckers woke up my . . . baby with your loud music!" Dkt No. 84-1 at 6. Officer Bath was not in a police uniform and did not have any police identification. In fact, neither Ms. Taylor nor Mr. Bowers was dealing drugs or playing loud using; they were not engaged in any unlawful activity.

Officer Bath was armed with his personally owned Mossberg 590 shotgun, which he pointed at both Ms. Taylor and Mr. Bowers during the confrontation. After Officer Bath forced Mr. Bowers to lie on his back on the ground, Officer Bath stuck the barrel of his shotgun into Mr. Bowers' chest. Ms. Taylor then told Officer Bath that she was calling the police. Officer Bath pointed to a parked police vehicle nearby and told Ms. Taylor, "I am the police." Dkt. No. 84-1 at 6. Ms. Taylor explained to Officer Bath that because he was not in uniform, did not have

---

[1] Officer Bath's version of events differs dramatically from the version here.

2

a badge on, and had not identified himself as a police officer, she would still call the police. Ms. Taylor called 911 and reported that there was a man "with a gun to my friend's chest . . . claiming he's the police," and she requested police assistance. Dkt. No. 84-1 at 6.

Officer Bath then instructed Ms. Taylor to leave, and Ms. Taylor started to walk away. She tried to use her phone to take video footage but was unable to do so. Officer Bath karate chopped her hand, making her drop her phone, grabbed the braids in her hair, and "snatched back" her neck. Dkt. No. 84-1 at 6. Officer Bath threw Ms. Taylor to the ground face first, knocking the wind out of her. He jumped onto her and sat on her lower back, placing his full body weight on her. Officer Bath then pulled Ms. Taylor's arms as far as he could behind her back and held her arms there.

Officer Bath then yelled for his wife, who was outside and present at the time of the incident, to get his handcuffs from inside their residence. Officer Bath remained on top of Ms. Taylor, still tugging on her arms to hold them behind her back, until Officer Bath's wife returned with his handcuffs. Officer Bath continued pulling on Ms. Taylor's arms to tightly place handcuffs on both of Ms. Taylor's wrists. Officer Bath left Ms. Taylor lying face down on the ground in the dirt for another five to ten minutes until other Indianapolis Metropolitan Police Department ("IMPD") officers arrived on the scene. Ms. Taylor was restrained in handcuffs for another thirty to forty minutes before the other IMPD officers removed them.

When other police officers arrived at the scene, Ms. Taylor gave them permission to search her car. No illegal drugs, firearms, or other contraband were found in Ms. Taylor's vehicle or nearby. Ms. Taylor was then released. Officer Bath was ordered by the supervising IMPD officer at the scene to apologize to Ms. Taylor. Neither Ms. Taylor nor Mr. Bowers was charged with any crime or ordinance violation of any kind as a result of the confrontation with

Officer Bath. As a result of the Citizens Police Complaints that Ms. Taylor and Mr. Bowers filed with the City of Indianapolis Citizens Police Complaint Office and the IMPD investigation that followed, then IMPD Chief of Police Richard Hite found that Officer Bath had violated several IMPD policies. Specifically, Officer Bath was disciplined for conduct unbecoming an officer for using demeaning and affronting gestures towards Ms. Taylor and Mr. Bowers; failing to have his law enforcement identification when taking a police action; causing a negative response from a citizen who challenged his authority and called 911; improperly involving a citizen in a police action; failing to control his weapon; and failing to obtain a valid work permit, putting his courtesy officer status in question.

Ms. Taylor has filed this action pursuant to 42 U.S.C. § 1983, alleging violations of her rights under the Fourth and Fourteenth Amendments of the United States Constitution, and the laws and Constitution of the State of Indiana.

### III. DISCUSSION

The claims that remain at issue in Ms. Taylor's complaint are against Officer Anthony Bath and the City. Ms. Taylor alleges that (1) Officer Bath unreasonably seized her; (2) Officer Bath used excessive force against her; and (3) these violations were caused by policies, practices, or customs developed, implemented, enforced, encouraged, and sanctioned by the City. Each claim is discussed in further detail below.

**A. Unreasonable Seizure Claims Against Defendant Bath**

Officer Bath has moved for summary judgment on the unreasonable seizure claim on two grounds: (1) his actions were objectively reasonable in light of the circumstances and therefore did not violate the Fourth Amendment; and (2) he is entitled to qualified immunity from liability

for these claims, because even if he committed the actions alleged by Ms. Taylor, those actions would not have violated any clearly established Fourth Amendment right.

In order to establish a violation of the Fourth Amendment, a plaintiff must show that the defendant's conduct constituted a "seizure" and that the seizure was unreasonable. *Belcher v. Norton,* 497 F.3d 742, 747 (7th Cir. 2007). Viewing the facts in the light most favorable to Ms. Taylor, a reasonable jury could find that Officer Bath's seizure of Ms. Taylor was unreasonable. Looking at the facts as alleged by Ms. Taylor, a reasonable jury could find that there was no probable cause or reasonable suspicion to investigate her for a noise ordinance, given that no music was coming from her car. Likewise, a reasonable jury could find that Officer Bath did not have probable cause to arrest Ms. Taylor for criminal trespass (or anything else) when she began to walk away from him.

Next, Officer Bath argues that he is entitled to qualified immunity with respect to Ms. Taylor's federal claims. Qualified immunity "is 'an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (quotation omitted). The Court must engage in a two-part inquiry in determining the applicability of qualified immunity. First, the Court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. Second, the Court must determine "whether the right was clearly established." *Id.* This inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." *Id.*

Viewed in the light most favorable to Ms. Taylor, the facts demonstrate that Officer Bath unreasonably seized and detained her. Officer Bath's alleged conduct, therefore, would violate

5

Ms. Taylor's constitutional right to be free from unlawful search and seizure. Likewise, the right that Ms. Taylor claims was violated was clearly established at the time of the violation. Specifically, police officers may not arrest a person without probable cause to do so. *Ker v. State of Cal.*, 374 U.S. 23, 34-35 (1963) ("The lawfulness of the arrest without warrant . . . must be based upon probable cause."). Therefore, Officer Bath is not entitled to qualified immunity on the federal illegal seizure claims.

Viewing the facts of record in the light most favorable to Ms. Taylor, the Court is unable to find as a matter of law that Officer Bath did not illegally seize Ms. Taylor. Nor is Officer Bath entitled to qualified immunity on the federal illegal seizure claims. As such, Officer Bath's motion for summary judgment is **DENIED** as to the illegal seizure claims against him.

### B. Excessive Force Claims Against Officer Bath

Officer Bath also has moved for summary judgment on Ms. Taylor's excessive force claims on two grounds: (1) his actions were objectively reasonable in light of the circumstances and therefore did not violate the Fourth Amendment; and (2) he is entitled to qualified immunity from liability for these claims, because even if he committed the actions alleged by Ms. Taylor, those actions would not have violated any clearly established Fourth Amendment right.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. U.S. Const. Am. IV. This includes the right to be free from an unreasonable seizure conducted through the use of excessive force. Whether the force employed by an officer during seizure is constitutionally excessive depends on its "objective reasonableness," which is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and is considered in light of the specific facts and circumstances of that particular case. *Graham v. Connor*, 490 U.S. 386, 396-97

(1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)); *see also Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (noting that the question is "whether the totality of the circumstances justifie[s] a particular sort of seizure"). Viewing the facts in the light most favorable to Ms. Taylor, a reasonable jury could find that Officer Bath did use excessive force by throwing Ms. Taylor to the ground, sitting on her, and roughly handcuffing her.

Turning to whether Officer Bath is entitled to qualified immunity, viewing the facts in the light most favorable to Ms. Taylor, she sufficiently alleges that Officer Bath used excessive force. Officer Bath's alleged conduct, therefore, would violate Ms. Taylor's constitutional right to be free from excessive force. Likewise, the right that Ms. Taylor claims was violated was clearly established at the time of the violation. Specifically, "an officer's use of force is unreasonable from a constitutional point of view if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (quotation and citation omitted). Therefore, Officer Bath is not entitled to qualified immunity on the federal excessive force claims.

Viewing the facts of record in the light most favorable to Ms. Taylor, the Court is unable to find as a matter of law that Officer Bath did not use excessive force against Ms. Taylor. Nor is Officer Bath entitled to qualified immunity on the federal excessive force claims. As such, Officer Bath's motion for summary judgment is **DENIED** as to the excessive force claims against him.

### C. Claims Against the City

#### 1. *Monell* Claims

The City argues that it is entitled to summary judgment on Ms. Taylor's *Monell* claims. A municipality may be liable under § 1983 "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "'Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policymaker.'" *Roach v. City of Evansville,* 111 F.3d 544, 548 (7th Cir. 1997) (quoting *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)).

Ms. Taylor characterizes her *Monell* argument as follows:

> [T]he defendant City failed to adequately supervise and train Officer Bath and its patrol officers regarding the use of force, the use of deadly force, and anti-bias and anti-racial profiling training which was the "moving force" behind the deprivation of her constitutional rights to free [sic] from an unreasonable seizure and to free[sic] from use of unreasonable and excessive force by Officer Bath regarding her July 23, 2014 arrest.
>
> Despite the training Officer Bath received in his capacity as a patrol officer with IMPD, defendant City was deliberately indifferent to the need to provide further training after learning of a pattern of constitutional violations involving the exercise of police discretion. *Robles v. City of Fort Wayne,* 113 F.3d 732, 735 (7th Cir. 1997). In at least three (3) reported cases, defendant City had actual notice of deficiencies in its police training regimen regarding the excessive force claims and/or unlawful arrest claims against its police officers. *See Tibbett v. McPherson,* 5 F.Supp.3d 989 (S.D. Ind. 2014) (Summary judgment denied on Section 1983 plaintiff's unlawful arrest claim against IMPD officers); *Guttieriez v. City of Indianapolis,* 886 F.Supp.2d 984, 1001 (S.D. Ind. 2012) (Summary judgment denied on Section 1983 plaintiff's unlawful arrest and excessive force

claims against IMPD officers); *Fidler v. City of Indianapolis,* 428 F.Supp.2d 857, 869 (S.D. Ind. 2006) (Summary judgment denied on Section 1983 plaintiff's excessive force claim against IMPD officers). Based on these reported cases, the defendant City was clearly on notice to [sic] deficiency in its training regimen for its police officers was deficient and further training of its police officers was necessary to avoid future constitutional violation . However, defendant City's deliberately [sic] indifference to the need to provide further training to its police officer including Officer Bath led to tragic consequences regarding the illegal arrest of Ms. Taylor and the use of grossly excessive force against her in the July 23, 2014 arrest.

Dkt. No. 102-1 at 11.

The Seventh Circuit has explained that "there are only limited circumstances in which a failure to train will be characterized as a municipal policy under section 1983." *Robles v. City of Ft. Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (quotations and citations omitted). In *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." That standard is met where, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is . . . obvious," and the existing inadequacy is "likely to result in the violation of constitutional rights." *Id.* at 390.

A municipality would demonstrate a deliberate indifference to the constitutional rights of its citizens by failing to train its employees "with respect to a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Cornfield v. Consolidated High School Dist. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). Likewise, it would be deliberately indifferent if it failed to provide further training after learning of a pattern of constitutional violations involving the exercise of police discretion. *City of Canton,* 489 U.S. at 390 n.10. Under either scenario, the finding of "deliberate indifference" would be derived from the City's

failure to act in the face of "actual or constructive notice" that such a failure is likely to result in constitutional deprivations. *Cornfield,* 991 F.2d at 1327.

Here, Ms. Taylor points to three lawsuits that she argues put the City on notice that its training regimen for police officers was deficient and that further training was necessary. As the City notes, Ms. Taylor fails to explain how these cases provided the City with such notice.[2] Nor does Ms. Taylor point to evidence that would allow a jury to find that the City had notice of any prior bad acts by Officer Bath. Further, the City points to evidence showing that IMPD officers undergo extensive training before and during service. Accordingly, Ms. Taylor has not pointed to any evidence upon which a reasonable jury could find the city liable under *Monell*, and the City's motion for summary judgment is **GRANTED** as to the federal claims against it.

### 2. State Law Claims

The City also moves for summary judgment on Ms. Taylor's state law claims against it. Indiana's courts have not recognized a civil damages remedy for alleged violations of Article I of the Indiana Constitution. *See, e.g.*, *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006). In addition, Ms. Taylor failed to address these claims at all in her response. Accordingly, the Court finds that she has abandoned these claims, and **GRANTS** summary judgment as to the state law claims against the Cirty. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) ("[B]ecause Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed

---

[2]As the City points out, *Tibbett v. McPherson*, 5 F. Supp. 3d 989 (S.D. Ind. 2014), one of the cases cited by Ms. Taylor, did not involve the City of Indianapolis or IMPD; rather, the police officers involved worked for the Seymour Police Department. Another case cited by Ms. Taylor, *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857 (S. D. Ind. 2006), resulted in a jury verdict for the defendant IMPD officers. The third case cited by Ms. Taylor, *Gutierrez v. City of Indianapolis*, 886 F. Supp. 2d 984 (S. D. Ind. 2012), was simply an order denying summary judgment, not evidence that IMPD officers violated anyone's constitutional rights.

abandoned."); *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562, n.2 (7th Cir. 1996) ("Bombard abandoned his FMLA claim after failing to respond to the FMLA arguments in FWN's motion for summary judgment.").

## IV. CONCLUSION

Defendant Bath's Motion for Summary Judgment is **DENIED** (Dkt. No. 98). Defendant City of Indianapolis' Motion for Summary Judgment is **GRANTED** (Dkt. No. 83). Ms. Taylor's federal claims against Officer Bath remain pending for trial, which is scheduled for January 22, 2018. **The parties are reminded of their pretrial preparation deadlines contained in Docket No. 34 in advance of the December 15, 2017, final pretrial conference.**

**SO ORDERED: 11/15/17**

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.